UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION AT LAFAYETTE

| | |
|---|---|
| NINA HU, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) No. 4:25-cv-0028-PPS-JEM |
| | ) |
| KRISTI NOEM, *et al.*, | ) |
| | ) |
| Defendants. | ) |

**Plaintiffs' Reply Memorandum in Support of their Motion for Temporary Restraining Order[1]**

In response to the arguments of the plaintiffs ("the Students"), the defendants ("United States") recycle arguments that have been rejected by virtually every court to consider them. They fare no better here.

**I.  This case concerns the termination of the Students' immigration *status*, not merely a change in the United States's record-keeping system**

The United States's arguments in this case hinge almost entirely on its assertion that, even though it terminated the Students' F-1 status in its web-based record-keeping system, SEVIS, it has taken no action whatsoever with respect to their actual F-1 immigration status. (Dkt. 17 at 14-15). This assertion belies common sense, the United States's own statements and practice, the facts of this

---

[1]    The plaintiffs are submitting this memorandum against widespread media reports on April 25, 2025, that the United States was restoring the legal status of nonimmigrant foreign students whose statuses had been terminated. *See, e.g.,* Wash. Post, *DHS reinstates foreign students after court losses pile up,* Apr. 24, 2025, https://www.washingtonpost.com/education/2025/04/25/international-students-records-visa-trump-dhs-sevis (last visited Apr. 26, 2025); N.Y. Times, *U.S. Restores Legal Status for Many International Students, but Warns of Removals to Come*, Apr. 25, 2025, https://www.nytimes.com/2025/04/25/us/politics/trump-student-visa-cancellations.html (last visited Apr. 26, 2025). Following this news, the plaintiffs' counsel reached out to counsel for the defendants and was informed that no specific information was yet available concerning the Students.

Since then, counsel has been informed by all the plaintiffs with the exception of Sebastian Carbajal that they have been notified by their schools that their status in the SEVIS system has been reinstated to "active." The Students await an explanation from the United States as to whether their F-1 status has been permanently restored.

case, and a veritable cavalcade of judicial decisions that have issued in recent weeks. The termination of the Students' SEVIS records may have been the *method* through which the United States effected the termination of their F-1 status, but their status itself has been terminated. As a result, they are (a) unable to continue their studies, employment, and lives, (b) required to immediately depart the United States or face detention and involuntary removal, and (c) potentially accruing unlawful-presence time that may dramatically impact any attempt to regain status or return to the United States in the future.

In fact, while the United States is quick to discount the termination of the Students' F-1 status as supported only by "unsubstantiated statements from the students' schools" (Dkt. 17 at 15), it ignores the fact that under federal law, it is the schools themselves, through their Designated School Officials, who receive "system alerts generated by SEVIS." 8 C.F.R. § 214.3(l)(1)(ii). The notices that the Students received from their schools were directed by the information received from the United States and the consequences of the United States's actions were clear. As one notice specified, "your F-1 status in the U.S. is terminated, and you are no longer considered lawfully present in the U.S. Additionally, you may be at risk of detention and deportation." (Dkt. 1-8 at 1). The schools were merely passing on information they received from the United States.

Moreover, the United States ignores the fact that its actions have prompted its own State Department to revoke at least two of the Students' visas. (Dkt. 1 ¶¶ 64, 161). Notices sent by the United States itself thus warned of the potential consequences of "[r]emaining in the United States without a lawful status" and provided instructions on what should be done "[a]s soon as you depart the United States." (Dkt. 1-3 & 1-11). This, too, is not language associated with meaningless record-keeping.

Against this factual backdrop, this is how DHS itself explains the termination of a student's SEVIS record: "A terminated record in [SEVIS] could indicate that the nonimmigrant no longer maintains F or M status." *See* U.S. Dep't of Homeland Security, *SEVIS Help Hub: Terminate a Student*,

*at* https://studyinthestates.dhs.gov/sevis-help-hub/student-records/completions-and-terminations/terminate-a-student (last visited Apr. 24, 2025) (also attached as Exh. 1). It then describes the "effects of termination":

**Effects of Termination**

When an F-1/M-1 SEVIS record is terminated, the following happens:

- Student loses all on-and/or off-campus employment authorization.
- Student cannot re-enter the United States on the terminated SEVIS record.
- Immigration and Customs Enforcement (ICE) agents may investigate to confirm the departure of the student.
- Any associated F-2 or M-2 dependent records are terminated.

(*Id.*). And, unless a student's status has been terminated for certain reasons not applicable here, "the student must either apply for reinstatement, or the student and dependents must leave the country immediately." (*Id.*).[2]

Neither 8 U.S.C. § 1372 nor 8 C.F.R. § 214.2(f)(5)—both relied on by the United States—is to the contrary. As the United States acknowledges, the statute simply "authorizes SEVIS" but says nothing about the effect of terminating a student's records through that program. And the regulation simply describes the duration of F-1 students' status *unless* they fail to maintain that status (8 C.F.R. § 214.2(e)-(g)) or their status is terminated (8 C.F.R. § 214.1(d)). Here, it has been terminated.

---

[2] This emphasis on the ability to seek reinstatement—a process that is wholly discretionary with the United States, from which no appeal lies, and that appears to be limited to unforeseeable events such as "serious injury or illness," "a natural disaster," or a school's "oversight," 8 C.F.R. § 214.2(f)(16)—only underscores the fact that the Students' status itself has been terminated here: if their F-1 status has not been terminated, then what would they need reinstatement of?

3

Not only is the United States's contention contrary to the virtually unanimous chorus of courts (now numbering in the dozens, *see* Dkts. 5-2 through 5-16; attached Exhs. 2-22) that have issued temporary restraining orders under near-identical circumstances, but many of these decisions have explicitly rejected the attempt to distinguish between the termination of a student's SEVIS record and the termination of their F-1 status.[3] For instance, in *Doe v. Noem*, No. 2-25-cv-01103-DAD-AC (E.D. Cal. Apr. 17, 2025), the court acknowledged the United States's argument that "termination of the SEVIS record does not equate to termination of plaintiff's F-1 visa status and in fact has no legal consequences" but concluded that "defendants cite no authority for this proposition, and district courts addressing terminated SEVIS records have found that such an action necessarily involves terminating plaintiff's F-1 status." (Dkt. 5-5 at 10 n.1). And the court in *Oruganti v. Noem*, No. 2:25-cv-00409-ALM-EPD (S.D. Ohio Apr. 18, 2025) (attached as Exh. 14) at 3, citing the excerpts from DHS's website detailed above, similarly rejected the arguments "that terminating a SEVIS record is distinct from revoking an F-1 status, and that [the school] likely misinterpreted the significance of the SEVIS record termination."[4]

---

[3] Many of the decisions that have issued in similar cases are now available through Westlaw. For convenience of the Court, and in light of the exigencies of this action, these decisions have been filed in conjunction with the Students' briefing. Citations to these cases are made to the page numbers as assigned by this Court's electronic-filing system rather than to page numbers assigned by Westlaw.

[4] *See also Liu v. Noem*, No. 25-cv-00133-SE-TSM (D.N.H. Apr. 10, 2025) ("Because DHS terminated Liu's F-1 student status in the SEVIS system, he is no longer authorized to work as a research assistant or participate in any research . . . . These circumstances will derail Liu's academic trajectory and ability to complete his Ph.D. program in a timely fashion. . . . Further, the change in Liu's status in the SEVIS system may expose him to a risk of detention or deportation. The defendants' inability to agree that he would not be detained or deported as a result of his status change before the defendants could be heard on Liu's request for preliminary relief is an acknowledgment of the existence of this risk.") (Dkt. 5-12 at 3-4); *Doe #1 v. Trump*, No. CV-25-00174-TUC-JGZ (D. Ariz. Apr. 24, 2025) (attached as Exh. 3) at 4-5 ("[O]n the one hand, the Government says Plaintiff is wrong to conflate the termination of her SEVIS record with the termination of her F-1 status; on the other hand, the Government itself appears to conflate the two actions and treat Plaintiff as if she has in fact failed to maintain status. As other courts facing this issue in recent days have found, it is likely that the termination of a student's SEVIS record 'effectively terminates that student's F-1 status.'") (internal alterations omitted); *Chen v. Noem*, No. 25-cv-03292-SI (N.D. Cal. Apr. 18, 2025) (attached as Exh. 5) at 5 ("In other cases with similarly situated individuals, the government has refused to provide assurances that the plaintiffs will not be arrested while their litigation proceeds."); *Madan v. Noem*, No. 1:25-cv-419 (W.D. Mich. Apr. 23, 2025)

In fact, while the Students here were notified of the termination of their status by their schools, in other cases, the United States (or one of its agencies) has itself equated termination in SEVIS with termination of F-1 status. In *Jie Fang v. Dir. U.S. Immig. & Cust. Enforc.*, 935 F.3d 172 (3d Cir. 2019), for instance, DHS informed students that "[s]ince your SEVIS record has been Terminated you no longer have valid F-1 nonimmigrant status and must either file for reinstatement . . . or depart the United States immediately." *Id.* at 177. And in *Ozturk v. Trump*, __ F. Supp. 3d __, 2025 WL 1009445, at *3 (D. Mass. Apr. 4, 2025)—the well-publicized case of a Turkish student with F-1 status surrounded and detained by ICE agents near her Massachusetts home—the notice ultimately provided to Ms. Ozturk by federal officials explained that her detention was justified because her "SEVIS designation 'ha[d] been terminated'" (cleaned up).[5]

All of this should ultimately be academic, for the United States is unable to say what it believes terminating a student's *record* does—or why it has taken that action—independent from the termination of a student's *status*. Across the country, it has done *something* that has served to prevent international students from continuing their studies and their lives even though they have done everything necessary to maintain their F-1 status. If it now believes that this action was taken in error, it must undo it; absent that, a temporary restraining order is necessary to require it to restore the Students' F-1 status and to prevent the disastrous consequences of its actions.

## II.  The Students are suffering irreparable harm

---

(attached as Exh. 11) at 5 ("[T]he Court rejects the government's position that changing Plaintiffs' F-1 student status in SEVIS to 'terminated' was a decision of a 'merely tentative or interlocutory nature.' Rather, this Court, like other courts, preliminarily concludes that the termination was a unilateral determination with immediate legal consequences over which Plaintiffs have no ability to seek administrative review.").

[5]    These instances of the United States equating termination in SEVIS with termination of status do not stand alone. In *Doe v. Noem*, No. 3:25-cv-00023 (W.D. Va. Apr. 21, 2025) (attached as Exh. 19) at 2-3, for instance, the plaintiff's termination through SEVIS was followed by an e-mail from the U.S. Department of State warning that "[r]emaining in the United States without a lawful immigration status can result in fines, detention, and/or deportation" and "may also make you ineligible for a future U.S. visa."

5

The loss of their F-1 status means that the students cannot continue their education despite the vast commitment—financial and otherwise—they have put into this endeavor. A number of the students who had lawful university employment as their sole income have lost that employment as well as their health insurance. (Dkt. 1 ¶¶ 93, 107, 126 and attached Exhs. 23 and 24[6]). One plaintiff has lost employment for the summer and will not be able to regain employment without lawful status. (Dkt. 1 ¶ 50]). As the Students no longer have lawful status, they are required to immediately depart the United States and, insofar as they have not, are accumulating unlawful presence time that, when it reaches a certain point, will prevent them from obtaining a new visa allowing them to reenter the United States. 8 U.S.C. § 1182(a)(9)(B). All of them are suffering various forms of emotional injuries such as depression, stress, anxiety, difficulty in sleeping, because of fear of their uncertain future. (*See* Dkt. 6 at 23). After all, each of them understands that they are "no longer lawfully present in the U.S." and that they "may be at risk of detention and deportation." (Dkt. 1-8 at 1).

The United States ignores all this harm and argues that the fact that the Students are facing removal is not in itself irreparable harm and that the Students have not provided real evidence as to how they are harmed except for speculation or potential monetary losses. (Dkt. 17 at 8-10). This callous diminishment of the toll that the United States's actions have caused ignores the fact that these arguments have been rejected time and time again by numerous district courts. (*See* Dkt. 6 at 23-24 [citing cases]; *see also Doe #1 v. Trump*, No. CV-25-00174-TUC-JGZ (D. Ariz. Apr. 24, 2025) (attached as Exh. 3) at 6-7; *Doe #1 v. Noem*, No. 3:25-cv-00042-RGE-WPK (S.D. Iowa Apr. 24, 2025) (attached as Exh. 10) at 5; *Alduaij v. Noem*, No. 2:25-cv-00538 (W.D. Pa. Apr. 23, 2025) (attached as Exh. 16) at 2-3; *Vyas v. Noem*, No. 3:25-0261 (S.D.W. Va. Apr. 23, 2025) (attached as Exh. 20) at 2).

As one of these courts noted, citing some of the other cases:

Plaintiff has made a clear showing that he faces immediate, irreparable harm here. For

---

[6]    *See* Note 1, *supra*,

6

> one, the termination of his F-1 status and SEVIS record prevents him from participating fully in his graduate program, which in turn threatens his scholarship and jeopardizes his academic and professional prospects. Multiple courts addressing motions to temporarily enjoin similar terminations of F-1 statuses and SEVIS records have recognized that the loss of timely academic progress is alone sufficient to establish irreparable harm.
>
> Further, Plaintiff will accrue unlawful presence time as long as he lacks lawful F-1 status. Once it reaches a certain point, unlawful presence time will bar his future admission and re-entry to the United States. *See* 8 U.S.C. § 1182(a)(9)(B). Other courts have found—and this court agrees—that the accrual of unlawful presence time is an irreparable harm because it may subject a person to lengthy re-entry bars that are not judicially reviewable.
>
> Beyond the immediate harms already caused by the termination of Plaintiff's SEVIS record, the threat of detention and deportation loom. . . . While removal by itself is not an irreparable harm, removal here would magnify the other harms Plaintiff has suffered and raise doubts about his ability to return to the United States to complete his course of study and pursue professional opportunities.

*Doe v. Noem*, No. 3:25-cv-00023 (W.D. Va. Apr. 21, 2025) (attached as Exh. 19) at 5-6 (internal citations omitted).[7] The Students face clear and continuing irreparable harm.

### III. The Students will prevail on their legal claims

#### A. The actions of the United States violate the Administrative Procedure Act

##### 1. This Court has jurisdiction to hear the APA claim

In passing, the United States argues that a district court does not have jurisdiction over any claim by an "an alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders." (Dkt. 17 at 23-24 [citing 8 U.S.C. § 1252(g)]). While this is what the statute says, it is of no relevance here. The Supreme Court has

---

[7] While it is true, as noted by the *Doe* court and by the United States, that the Supreme Court has stated that removal is not "categorically irreparable," that statement was made against the backdrop of a regulatory scheme where those who are removed have a process where they could pursue a petition for review even after removal. *Nken v. Holder*, 556 U.S. 418, 435 (2009). The United States does not contest the fact that those whose F-1 status is revoked do not have the ability to have that issue reviewed in an immigration court. (Dkt. 5-1 ¶ 20). Moreover, the Supreme Court did not foreclose the possibility of removal causing irreparable harm. It just said it was not automatically irreparable. On remand, the United States agreed to allow Nken to remain in the country pending resolution of his appeal and therefore whether removing him pending the proceeding would in fact constitute irreparable harm was never resolved. *Nken v. Holder*, 585 F.3d 818, 821 (4th Cir. 2009).

indicated that § 1252(g) must be given a "narrow reading." *Reno v. American-Arab Discrimination Comm.*, 525 U.S. 471, 486 (1999). The Seventh Circuit has made clear that this statute applies only to litigation arising from the actions enumerated in the statute—removal proceedings. *Sharif ex rel. Sharif v. Ashcroft*, 280 F.3d 786, 787 (7th Cir. 2002). As the United States is quick to point out, the Students are not in removal proceedings, and the United States's argument attempting to foreclose review under the APA has no merit. Not surprisingly, the argument of the United States has been rejected by other courts in cases similar to this one. *See, e.g.*, *Chen v. Noem*, No. 1:25-cv-00733-TWP-MG (S.D. Ind. Apr. 21, 2025) (attached as Exh. 9), at 8 (citing other cases).

### 2. This is a challenge to final agency action

As demonstrated above, and in many other cases, the issue here is not the contents of the Students' SEVIS records but what that termination *means*—that is, the loss of their F-1 status.[8] And this loss, for which there is no administrative review, represents final agency action.

Despite the United States's argument to the contrary, this is the precise holding of *Jie Fang*. The students there argued that "the termination of their status constituted a final order because ICE's decisionmaking process is now complete. Their lawful F-1 student status has been stripped away from them." 935 F.3d at 180. The United States attempts to limit the holding of *Jie Fang* to its precise facts, involving a finding of fraud as the basis for the termination. (Dkt. 17 at 16-17). This reads *Jie Fang*

---

[8] The fact that this case concerns the termination of *status* and not merely a recordkeeping snafu answers the United States's lengthy argument concerning the Privacy Act. (Dkt. 17 at 18-24). While the Privacy Act provides some individuals with a cause of action to view government records about themselves or to challenge the correctness of data maintained in those records, 5 U.S.C. § 552a(g)(1), the Students simply are not challenging the correctness of the United States's recordkeeping nor are they asking the United States to correct any data: they are challenging the termination of their F-1 *status*. Indeed, as the United States acknowledges, relief under the Privacy Act is limited to United States citizens and lawful permanent residents, *see* 5 U.S.C. § 552a(a)(2), so its argument would also mean that the Students have no recourse whatsoever even though every aspect of their lives has been uprooted. Not surprisingly, not a single court has accepted this argument, and several have expressly rejected it. *See Doe v. Noem*, No. 2:25-cv-01103-DAD-AC (E.D. Cal. Apr. 17, 2025) (Dkt. 5-5 at 8-9); *Doe 1 v. Bondi*, No. 1:25-cv-01998-VMC (N.D. Ga. Apr. 18, 2025) (Dkt. 5-7 at 10-11); *Chen v. Noem*, No. 1:25-cv-00733-TWP-MG (S.D. Ind. Apr. 21, 2025) (attached as Exh. 9) at 4-5; *Madan v. Noem*, No. 1:25-cv-419 (W.D. Mich. Apr. 23, 2025) (attached as Exh. 11) at 5.

much too narrowly. The issue in the case was whether "terminating these students' F-1 visas marked the consummation of the agency's decisionmaking process, and is therefore a final order." 935 F.3d at 182. And the court concluded that the revocation of F-1 status was final agency action because "there is no mechanism to review the propriety of the original termination order." *Id.* "[T]he termination of the students' F-1 visa status in the matter that occurred here is not akin to the initiation of the agency's decisionmaking process. Rather, it is the culmination of that process." *Id.* at 183-84. Nothing about the reason for termination was remotely relevant to the court's legal holding. Indeed, even if removal proceedings are implemented against the Students, the termination of their F-1 status cannot be reviewed in these proceedings. *Id.* at 185. (*See also* Dkt. 5-1 ¶ 20). This is a final agency decision and is therefore reviewable under the APA. 5 U.S.C. § 702.

The United States acknowledges the uniform holdings of numerous district courts across the country that the termination of the F-1 status of the plaintiffs is final action reviewable under the APA. (Dkt. 17 at 13). However, the United States contends that these other cases are "[s]hort-fuse TRO[s] . . . [that] do not necessarily reflect a final, considered judgment on the issue of final agency action." (*Id.*). The fact that they are decisions on temporary restraining orders is no reason to denigrate the depth of the other courts' consideration of this issue. Moreover, the fact that the United States cannot cite to a single court that holds to the contrary on this point is certainly significant. The termination of the Students' F-1 status is final agency action.

### 3. The termination of the Students' status was arbitrary, capricious, an abuse of discretion, and otherwise contrary to the law and the Constitution

*Jie Fang* held that the ability of the United States to terminate F-1 status is limited by 8 C.F.R. § 214.2(d). 935 F.3d at 185 n.100. Numerous district court in proceedings similar to this one have agreed. (*See* Dkt. 6 at 15-16 [citing cases]; *see also, e.g.*, *Doe #1 v. Noem*, No. 25-cv-926-RSH-BLM (S.D. Cal. Apr. 24, 2025) (attached as Exh. 6) at 5; *Doe #1 v. Noem*, No. 3:25-cv-00042-RGE-WPK (S.D.

9

Iowa Apr. 24, 2025) (attached as Exh. 10) at 4; *D.B. v. Trump*, No. 2:25-cv-419 (S.D. Ohio Apr. 23, 2025) (attached as Exh. 13) at 2; *Vyas v. Noem*, No. 3:25-0261 (S.D.W. Va. Apr. 23, 2025) (attached as Exh. 20) at 2; *Beyhaqi v. Noem*, No. H-25-1788 (S.D. Tex. Apr. 22, 2025) (attached as Exh. 22) at 2). The United States's response is to argue that the regulation does not provide the exclusive grounds for termination of F-1 status. (Dkt. 17 at 18). Given this argument, one would expect the United States to direct the Court to other statutory or regulatory sections that authorize the termination of F-1 status. But the United States cites only to 8 U.S.C. § 1201(i) and 8 C.F.R. § 214.2(f). (Dkt. 17 at 15). Neither supports its argument.

The statute, 8 U.S.C. § 1201(i), concerns revocation of visas. But this case does not concern the revoking of a visa—the document or passport stamp that merely allows someone to enter the United States—it concerns the revoking of a status that allows the person to *remain* in the United States once admitted. And the United States does not contest the fact that, as previously pointed out by the Students, the revocation of a visa is different from revocation of status. (Dkt. 6 at 6). After all, DHS itself has specified that that "[v]isa revocation is not, in itself, a cause for termination of the student's SEVIS record." *See* ICE Policy Guidance 1004-04 – Visa Revocations (June 7, 2010) at 3, available at https://www.ice.gov/doclib/sevis/pd/visa_revocations_1004_04.pdf (last visited Apr. 10, 2025). (*See also* Dkt. 5-1 ¶ 16). The statutory citation has no relevance here.

The regulation that the United State cites, 8 C.F.R. § 214.2(f), governs the F-1 program and F-1 status. This and surrounding subsections, *see* 8 C.F.R. § 214.2(e)-(g), specify that students may fail to maintain and therefore may lose F-1 status if they do not carry a full course of study, if they engage in unauthorized employment, if they provide false information to DHS, or if they are convicted of a crime of violence for which a sentence of more than one-year can be imposed. But the Students have demonstrated that none of them has done any of these, and the United States does not argue to the

contrary.[9]

The United States has not offered any regulatory or statutory justification for the termination of the Students' F-1 status and instead has acted in clear violation of the federal regulation, 8 C.F.R. § 214.1(d) that specifically regulates "[t]ermination of status." And the United States does not disagree that an agency violating its own regulation is arbitrary, capricious, and contrary to law. (Dkt. 6 at 14).[10] "Because it appears that Defendants did not identify a lawful ground for terminating Plaintiff[s'] F-1 status and SEVIS record[s], Plaintiff[s are] likely to prevail on [their] claims that the termination failed to comply with the applicable statutory and regulatory framework and was 'arbitrary, capricious, and abuse of discretion, or otherwise not in accordance with law' under the APA. 5 U.S.C. § 706(2)(A)." *Doe v. Noem*, No. 3:25-cv-00023 (W.D. Va. Apr. 21, 2025) (attached as Exh. 19) at 5.[11]

### B. The Students will prevail on their due process claim

#### 1. The Students possess a property interest in their F-1 status

The United States does not dispute that a property interest triggering the protections of the

---

[9] The declaration that DHS attaches to its response, which is actually the declaration it submitted in the case in the Southern District of Indiana in which some of the Students were originally plaintiffs, states that the Students were terminated for their "criminal histories" without alleging that they had been convicted of crimes of violence. (Dkt. 17-1 ¶¶ 12, 16, 24, 28, 32). Ms. Hu was the victim of a crime and has never committed a criminal offense. (Dkt. 1 ¶¶ 47-48). Mr. Zhu pled guilty to a non-traffic citation in 2024 and received a fine and had to pay restitution. (*Id.* ¶ 62). Mr Yu was charged with an offense in 2022, but the charges were dismissed. (*Id.* ¶ 77). Mr. Dai was charged with underage consumption of alcohol in 2022, although the charge was dismissed, and received a speeding ticket in 2024. (*Id.* ¶¶ 88-89). Ms. Ni was charged with a misdemeanor that will be dismissed in December when she fully completes a diversion agreement and also had a speeding ticket. (*Id.* ¶ 108). Mr. Odoeze pled guilty to a disorderly conduct misdemeanor and also has a speeding ticket. (*Id.* ¶ 127). The United States's declaration makes no reference to plaintiffs Ji or Carbajal. In any event, no claim is made that any of these "criminal histories" justify the loss or termination of status under the regulations. They clearly do not.

[10] Additionally, under the doctrine established in *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954), "federal agencies are required to follow their own regulations and some other formally adopted procedures, including those that concern exercises of an agency's discretion." *Zelaya Diaz v. Rosen*, 986 F.3d 687, 690 (7th Cir. 2021).

[11] For the reasons noted immediately below, the terminations of the Students' F-1 status is also "contrary to constitutional right." 5 U.S.C. § 706(2)(B).

Due Process Clause exists whenever an individual "cannot be denied the interest unless specific conditions are met." *Booker-El v. Superintendent*, 668 F.3d 896, 900 (7th Cir. 2012) (citation omitted). Nor does it even dispute that it may only terminate a student's F-1 status when one of the three preconditions established by 8 C.F.R. § 214.1(d) is met. *See Jie* Fang, 935 F.3d 172 at 185 n.100. Under a wide array of precedents previously cited, the only remaining question should be whether the Students were afforded constitutionally adequate process to challenge the termination of their status.

The United States contends that the Students "have no property interest in a SEVIS record." (Dkt. 15 at 14). But, as articulated above, a SEVIS record is merely an electronic recordkeeping system; it is not, in and of itself, an immigration status. Again, the Students in this case are concerned with their F-1 status—a status regulated by federal law and terminable only for specific reasons—not with how that status is memorialized by DHS. Notably, not one of the cases relied upon by the United States concerns the actual termination of a student's F-1 status:

- In *Doe 1 v. U.S. Dep't of Homeland Security*, 2020 WL 6826200, at *4 & n.3 (C.D. Cal. Nov. 20, 2020), *aff'd*, 843 Fed. App'x 849 (9th Cir. 2021), the court concluded that no property interest exists in continuing to hold a *visa* (as distinct from F-1 *status*) and implied that none exists in a SEVIS *record* (again, as distinct from F-1 *status*).

- In *Yunsong Zhao v. Va. Polytechnic Inst. & State Univ.*, 2018 WL 5018487, at *5-6 (W.D. Va. Oct. 16, 2018), a student sued his university for "the ministerial act of modifying [his] SEVIS record" thus requiring him only to "confer with [school] officials prior to registering for a new academic term; to the extent that the record implicated the plaintiff's 'immigration status,' whatever due process he is owed with respect to these issues is the prerogative of and provided in the immigration courts, not the hallways of Virginia Tech." The court did not even purport to address any process that the United States is obligated to provide, although it appeared to assume that the termination of a student's F-1 status may be meaningfully challenged through the immigration system. As this case makes clear, that is simply not true.

- In *Backhtiari v. Beyer*, 2008 WL 3200820 (E.D. Mo. Aug. 6, 2008), the court held only that certain regulations concerning the SEVIS system do not confer a private right of action allowing a student to sue a school official, an issue clearly not relevant to this case.

- And *S.M. v. Del. Dep't of Educ.*, 77 F. Supp. 3d 414, 419 (D. Del. 2015), and *Fan v. Brewer*, 2009 WL 1743824, at *8 (S.D. Tex. June 17, 2009), *aff'd*, 377 Fed. App'x 366 (5th Cir. 2010), are even further afield: *S.M.* dealt with whether a Delaware statute created a property interest entitling high school students to attend their school of choice (and did not concern any aspect

12

of immigration law), and *Fan* dealt with the procedures attendant to a student's dismissal from graduate school (and SEVIS is only mentioned in addressing an equal-protection claim).

Despite the fact that the Students' entitlement to their F-1 status hinges on 8 C.F.R. § 214.1(d), the United States does not once cite that regulation in contending that its actions comply with due process. That omission is fatal, for the principle that a property interest exists whenever a benefit can only be terminated "for cause" is beyond dispute. The Students possess a property interest in their F-1 status.[12]

### 2. The Students have not been afforded constitutionally adequate process

The United States does not dispute that the Students have been afforded no opportunity whatsoever to challenge the actual termination of their F-1 status. Again, that should be the end of this inquiry, for the most fundamental requirement of due process is that persons be afforded "some kind of notice and . . . some kind of hearing." *Goss v. Lopez*, 419 U.S. 565, 579 (1975). And, with exceedingly rare exceptions, this process must be made available *before* the deprivation takes effect. *See Zinermon v. Burch*, 494 U.S. 113, 127-28 (1990).

Ignoring this requirement of a pre-deprivation hearing, the United States nonetheless contends in passing that the Students will receive adequate process if they are placed in removal proceedings. (Dkt. 17 at 26). But SEVIS terminations and their consequences are not even reviewable by immigration courts. (Dkt. 5-1 at 5 [¶ 20]). And, more fundamentally, the Students have lost their F-1 status *today*: they cannot continue their education, those employed through their universities have lost that employment, and they are required to immediately depart the United States, as the notices received by some of the Students advised them to do. (*See, e.g.,* Dkt. 1-8). The United States's willingness to potentially afford them process at some indeterminate point in the future *if* they choose to stay in the

---

[12] *Deore v. Sec'y of U.S. Dep't of Homeland Security*, No. 2:25-cv-11038, Dkt. 20 (E.D. Mich. Apr. 17, 2025), cited by the United States, represents one of the very few instances in which a district court declined to issue a temporary restraining order under circumstances similar to this case. While noting that "[t]here is some reason to believe that a status change occurred," the court there merely accepted the United States's representation (at least at that preliminary juncture) that the termination of a student's SEVIS records did not equate to the termination of status. Slip op. at 11-13 & n.5 (emphasis removed). As detailed above, that is wrong.

country without lawful status, *when* removal proceedings are initiated against them, and *if* those proceedings allow for a challenge to the termination of their F-1 status cannot be reconciled with fundamental due-process principles (which, among other things, require a pre-deprivation hearing). *See Jie Fang*, 935 F.3d at 183-84. Indeed, as noted previously, an order of involuntary removal would carry significant collateral consequences to an individual's ability to return to this country, *see* 8 U.S.C. § 1182(a)(9)(A), and the United States's insistence that students must risk these consequences simply to challenge the termination of their F-1 status would dramatically disincentivize the exercise of their constitutional rights.

*    *    *

The Students' due process claim is exceedingly simple. Federal regulations provide that an international student's F-1 status may only be terminated for cause. That creates a property interest. The Fifth Amendment therefore requires that students be provided with a meaningful opportunity to challenge a termination before that termination takes effect. That has not been provided. The United States does not even attempt to dispute any of this, and its arguments cannot be reconciled with wide-ranging precedent. The Students are likely to prevail on their due process claim.

**IV.    The balance of harms and the public interest favor the grant of a temporary restraining order**

The Students are being caused irreparable harm and they are likely to prevail on the merits of their claims. The balance of harms and the public interest also favor the grant of a temporary restraining order.

"When the government is a party, the balance of equities and the public interest factors merge." *Nken,* 556 U.S. at 435. The United States argues that inasmuch as the "'[c]ontrol over immigration is a sovereign prerogative,'" that the balance of harms favor the United States. (Dkt. 17 at 24 [quoting *El Rescate Legal Servs., Inc. v. Exe. Office of Immigration Review,* 959 F.2d 742, 750 (9th Cir. 1992)]). But of course, as illustrated by *El Rescate*, this control does not immunize the United States

from review of immigration matters. While control over immigration is reserved to the United States, it has no interest in acting in a precipitous manner in violation of the rights of the Students. "Neither the Government nor the public has an interest in the violation of law and regulations." *Ajugwe v. Noem*, No. 8:25-cv-982-MSS-AEP (M.D. Fla. Apr. 18, 2025) (attached as Exh. 8) at 3. To the contrary, "there is a substantial public interest in having governmental agencies abide by the federal laws that govern their existence and operations." *League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016) (quotation and citation omitted).

## V.  No bond should be required

Although the United States does not claim that it, or anyone else, will suffer financial harm if a temporary restraining order issues, it nevertheless argues that a bond should be ordered and because "Plaintiffs argue that they lack a nonimmigrant status in the United States, the amount of any bond should be akin to an appearance bond." (Dkt. 17 at 25). There is more than a bit of irony in the United States arguing that because it has unlawfully stripped the Students of their F-1 status, a bond should be ordered to ensure that the Students appear. And this argument appears to contravene its repeated suggestion that this case concerns nothing other than meaningless record-keeping. The Students want nothing more except to stay here and they do not intend to go anywhere unless the United States detains them. In any event, the restraining order will not risk any monetary injuries, and so no bond should be required. *Habitat Educ. Ctr. v. U.S. Forest Serv.*, 607 F.3d 453, 458 (7th Cir. 2010).

## VI.  Conclusion

A temporary restraining order should therefore issue enjoining the United States to set aside the termination of the Students' F-1 status as reflected in their SEVIS records and to immediately restore that status, and enjoining the United States from taking any actions as a result of its prior decision to terminate the F-1 status of the Students.

Kenneth J. Falk
Gavin M. Rose
Stevie J. Pactor
ACLU of Indiana
1031 E. Washington St.
Indianapolis, IN 46202
317/635-4059
fax: 317/635-4105
kfalk@aclu-in.org
grose@aclu-in.org
spactor@aclu-in.org


Sarah L. Burrow
LEWIS KAPPES
One American Square, Suite 2500
Indianapolis, IN 46282
317/639-1210
fax: 317/639-4882
SBurrow@lewis-kappes.com

Attorneys for Plaintiffs