UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION AT LAFAYETTE

| | |
|---|---|
| NINA HU, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v.  ) | 4:25-CV-028-PPS-JEM |
| ) | |
| KRISTI NOEM, *et al.*, ) | |
| ) | |
| Defendants. ) | |

**ORDER**

Plaintiffs are eight international undergraduate and graduate students at Purdue, Notre Dame, and Indiana Tech[1] who had been studying in the United States under the F-1 student visa program. Earlier this month, Plaintiffs received notification from their respective schools that the government had changed the record of their F-1 student status in the Student and Exchange Visitor Information System ("SEVIS") database from "active" to "terminated." Plaintiffs interpreted this action to mean that their F-1 status itself had been terminated, so they sued to restore their F-1 status. I granted Plaintiffs' request for a Temporary Restraining Order ("TRO") the same day they filed their Complaint. [DE 13.] After an initial telephonic hearing, I later extended the TRO through the end of the day today. [DE 15; DE 16.]

There are two updates since last week. First, this past Friday, April 25, ICE announced in similar SEVIS cases across the country that they were reversing course

---

[1] Plaintiffs' Notice of Correction [DE 18] corrects scrivener's errors in Plaintiffs' Memorandum in Support of their Motion for a Temporary Restraining Order [DE 6] and confirms that Plaintiff Sebastian Carbajal attends Indiana Tech.

1

and reactivating SEVIS records for affected students.[2] Plaintiffs now represent that all eight Plaintiffs "have been notified by their schools that their status in the SEVIS system has been reinstated to 'active.'" [DE 19 at 1 n.1; DE 20.]

Second, today I held a fulsome hearing on Plaintiffs' Motion for Temporary Restraining Order. [DE 21.] At that hearing, the government confirmed on the record that all eight Plaintiffs currently have F-1 status. I understand the government's position that this admission is narrowly tailored to the Plaintiffs' F-1 status. The government has not made any representations regarding the overarching "lawfulness" of the Plaintiffs' status in the United States to the extent that there are other intervening circumstances effecting Plaintiffs' immigration status the government is not aware of at this time. Given the government's representations concerning F-1 status, the very relief sought by Plaintiffs, I decline to extend the present TRO. The TRO will therefore expire at 11:59 pm CST today, April 29, 2025.

## Background

The Immigration and Nationality Act authorized the F-1 student visa program to permit international students to enroll in and pursue study at government-approved academic institutions in the United States. 8 U.S.C. § 1101(a)(15)(F)(i). There are two components to the F-1 program that should not be confused. First, a student must gain admission to an approved educational institution, obtain a Form I-20 from their school, and receive an F-1 visa from the State Department. [DE 17 at 5.] It is this F-1 visa that,

---

[2] Adrian Florido, *Government says − for now − it will restore international students' status*, NPR (Apr. 25, 2025 5:56 PM ET), https://www.npr.org/2025/04/25/nx-s1-5377610/government-says-for-now-it-will-restore-international-students-status.

along with the Form I-20 and certain other documentary evidence, permits the student's entry at a U.S. port of entry. 8 C.F.R. § 214.2(f)(1)(i). This brings us to step two. F-1 students are not admitted for a predetermined timeframe. Instead, they are admitted for the duration of their F-1 status, which continues so long as they are "pursuing a full course of study" or "engaging in authorized practical training." *Id*. at § 214.2(f)(5)(i).

There are two ways an F-1 student may lose their F-1 status. A student may fail to maintain their status by failing to take a full course load, engaging in unauthorized employment, providing false information to the Department of Homeland Security ("DHS"), or if they are convicted of a crime of violence for which a sentence of more than one year can be imposed. *Id*. at § 214.2(e)–(g). The other avenue for a loss of status is affirmative termination of status by DHS in three limited circumstances: (1) a waiver previously authorized on the student's behalf under 8 U.S.C. § 1182(d)(3) or (4) is revoked; (2) a private bill is introduced in Congress to confer lawful permanent residence status; or (3) a notification is published in the Federal Register that identifies national security, diplomatic, or public safety reasons for terminating F-1 status. *Id.* § 214.1(d). DHS cannot otherwise unilaterally terminate nonimmigrant status. *See Jie Fang v. Dir. U.S. Immigr. & Customs Enf't*, 935 F.3d 172, 185 n. 100 (3d Cir. 2019).

Pursuant to Congressional directive, DHS created the SEVIS database to track international students' compliance with their F-1 status. *See* 8 U.S.C. § 1372(a)(1); *About SEVIS*, Dep't of Homeland Sec., https://studyinthestates.dhs.gov/site/about-sevis (last visited Apr. 29, 2025). A Designated School Official ("DSO") must report through SEVIS

when a student fails to maintain status. *See* 8 C.F.R. § 214.3(g)(2). ICE also uses SEVIS to monitor student status and track compliance with the terms of the student's status.

## Legal Standard

To warrant a temporary restraining order, Plaintiffs must demonstrate: (1) a likelihood of success on the merits; (2) no adequate remedy at law exists; and (3) they will suffer irreparable harm if the temporary restraining order is not granted. *See Incredible Techs., Inc. v. Virtual Techs., Inc.*, 400 F.3d 1007, 1011 (7th Cir. 2005). If these requirements are met, I must then balance the degree of irreparable harm to the Plaintiffs against the harm Defendants or the public will suffer if the TRO is granted (or, in this case, extended). *Id*. This balancing analysis takes a sliding scale approach, meaning that "the more likely the plaintiff will succeed on the merits, the less the balance of irreparable harms need favor the plaintiff's position." *Ty, Inc. v. Jones Grp., Inc.*, 237 F.3d 891, 895 (7th Cir. 2001). As is relevant here, "[t]he reasons for an extension [of a TRO] must be entered in the record." Fed. R. Civ. P. 65(b)(2).

## Discussion

Plaintiffs' Verified Complaint alleges a violation of the Administrative Procedure Act, 5 U.S.C. Section 706, as well as the Due Process Clause of the Fifth Amendment. Each Plaintiff has averred that they feared immediate arrest and deportation given the prior (but now seemingly reinstated) revocation of their F-1 student status through SEVIS. They have filed a Motion for Temporary Restraining Order and Preliminary Injunction [DE 5] and memorandum in support [DE 6].

In their Complaint, Plaintiffs ask the Court to issue an injunction enjoining Defendants to "immediately reinstate plaintiffs' F-1 student status." [DE 1 at 29.] They also request that the injunction enjoin "defendants to provide adequate notice and the opportunity to be heard if defendants attempt to terminate their F-1 status and SEVIS immigration records." [*Id.*] Plaintiffs' reply reiterates these requests adding a request to "enjoin[ ] the United States from taking any actions as a result of its prior decision to terminate the F-1 status of the Students." [DE 19 at 15.] Plaintiffs have represented that their SEVIS records have been restored to "active" status and that they are able to resume their classes and authorized employment. Further, the government represented that Plaintiffs currently have F-1 status.

Given these representations, it appears that Plaintiffs have secured the relief they asked this Court to provide. That said, I decline to make any formal ruling on mootness at this time. Counsel for Plaintiffs noted that three Plaintiffs (Junde Zhu, Xilai Dai, and Sebastian Carbajal) separately received notification from the State Department that their F-1 visas had been revoked. [DE 1 at ¶¶ 64, 91, 161.] Recall that an F-1 visa differs from F-1 status. I thus view the F-1 visa revocation issue for these three Plaintiffs as separate from the F-1 status issue asserted by all Plaintiffs. The Court leaves to the Parties to sort out whether this issue constitutes a separate prayer for relief and whether I have jurisdiction to decide that issue.

Given the current agreement on active F-1 status, I understand that Plaintiffs are no longer at risk of immediate deportation and able to resume their studies and authorized work. Because of this return to the pre-SEVIS record deletion status quo,

Plaintiffs no longer allege any irreparable harm that justifies continuation of the current TRO. *See Incredible Techs., Inc.*, 400 F.3d at 1011. Therefore, as previously mentioned, the Court will permit the current TRO [DE 16] to expire at 11:59 pm CST today, April 29, 2025.

    SO ORDERED.

    ENTERED: April 29, 2025.

/s/ Philip P. Simon  
PHILIP P. SIMON, JUDGE  
UNITED STATES DISTRICT COURT